IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLEE H. GARRETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 11-143J |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM JUDGMENT ORDER

AND NOW, this 25th day of September, 2012, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 7) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those

⬥AO 72
(Rev. 8/82)

findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending applications[1] for benefits on September 22, 2006, alleging a disability onset date of January 1, 2002, due to disorders of the neck, carpal tunnel syndrome, arthritis, herniated disc and depression. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on October 21, 2009, at which plaintiff, represented by counsel, appeared and testified. On March 24, 2010, the ALJ issued a decision finding that plaintiff is not disabled. On April 19, 2011, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 51 years old at the time of the ALJ's decision and is classified as a person closely approaching advanced age under the regulations. 20 C.F.R. §404.1563(d) and 416.963(d). She has at least a high school education and has past relevant work experience as a medical transcriptionist, but she has not engaged in any substantial gainful activity since her alleged onset date.

---

[1] For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on her alleged onset date and has acquired sufficient quarters of coverage to remain insured only through March 31, 2011.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that while plaintiff suffers from numerous severe impairments including: spinal stenosis, C5-6 and C6-7 levels but with no significant foraminal stenosis; myotis and myalgias; mild bilateral carpal tunnel syndrome; herniated nucleus pulposus, L5-S1 level, with radiculopathy; hepatitis C; major depressive disorder, recurrent; generalized anxiety disorder; social phobia; and marijuana dependence, the medical evidence does not show that plaintiff's impairments, alone or in combination, meet or medically equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform light work but with numerous restrictions recognizing the limiting effects of plaintiff's impairments.[2] A vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including routing clerk, inspector/packer and ampoule sealer. Relying on the vocational expert's testimony, the ALJ found that, although

---

[2] Specifically, plaintiff: must avoid prolonged writing, frequent keyboard work, or other repetitive motions known to aggravate carpal tunnel syndrome; must be afforded the option to sit and stand during the workday; is limited to simple, routine, repetitive, low stress tasks involving working primarily with objects rather than people; is limited to occasional interaction with supervisors; must avoid interaction with coworkers and the general public; and is limited to occupations which do not involve the handling, sale, or preparation of food and which are not in the medical field. (R. 15).

plaintiff cannot perform her past relevant work, she is capable of making an adjustment to jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[3] 20 C.F.R. §§404.1520 and 416.920. If the claimant is found disabled or not disabled at any

---

[3] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §§404.1520a and 416.920a.

step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises several challenges to the ALJ's determination that plaintiff is not disabled: (1) the ALJ improperly evaluated the medical evidence by failing to give controlling weight to the opinion of her treating psychiatrist and by emphasizing older evidence over more recent evidence; (2) the ALJ improperly evaluated plaintiff's credibility; and, (3) the ALJ erred by failing to consider the impact of her physical impairments, both singly and in combination, on her ability to work. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence.

Plaintiff's primary argument is that the ALJ improperly evaluated the medical evidence. Specifically, she contends that the ALJ improperly failed to give controlling weight to the opinion of her treating psychiatrist, Dr. Brinkley, who indicated in a mental impairment questionnaire dated November 3, 2009, that plaintiff is "unable to meet competitive standards" in a number of abilities and aptitudes needed to do work.[4] (R. 394). Plaintiff asserts that Dr. Brinkley's opinion is consistent with

---

[4] Specifically, Dr. Brinkley indicated that plaintiff would be unable to meet competitive standards in the following areas: maintain regular attendance and be punctual; sustain an ordinary routine without supervision; make simple work-related decisions; complete a normal workday and work week without interruptions; ask simple questions or request assistance; respond appropriately to changes in a routine work setting; deal with normal work stress; set realistic goals or make plans independently of others; deal with stress of semi-skilled and skilled work; and, interact appropriately with the general public. (R. 394-95).

the opinions of a psychologist, Dr. Fernan, as well as her counselor, Hallie Carlton. Plaintiff also alleges the ALJ improperly emphasized older evidence over the more recent evidence from Dr. Brinkley and Dr. Fernan. Upon review the court is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §§404.1527(d)(2) and 416.927(d)(2); Fargnoli, 247 F.3d at 33. Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. However, when a treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(d) and 416.927(d).

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence. His decision makes clear that he considered all of the relevant evidence from all medical sources, as well as the opinion from Ms. Carlton, and provided a detailed analysis of that evidence, setting forth sufficient explanations as to why he rejected or discounted any such

evidence. (R. 17-19). The court finds no error in the ALJ's analysis.

Significantly, the ALJ expressly addressed the opinion of Dr. Brinkley as to plaintiff's "inability to meet competitive standards" in certain areas and adequately explained why he did not give it controlling weight. (R. 18). In particular, the ALJ emphasized that Dr. Brinkley's assessment is internally inconsistent, as in the same report he also found that plaintiff has only mild limitations in her activities of daily living and in maintaining social functioning, and no more than moderate limitations in concentration, persistence or pace. (R. 395). Also in that same report, he rated plaintiff with a current Global Assessment of Functioning ("GAF")[5] score of 60, which is indicative of only moderate symptoms or moderate difficulty in social, occupational or school functioning. (R. 392).

The ALJ also found that Dr. Brinkley's opinion is inconsistent with other evidence in the record, in particular, a psychological evaluation and medical source statement from Dr.

---

[5] The GAF score considers psychological, social and occupational functioning on a hypothetical continuum of mental health. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994). A GAF rating of 41-50 indicates "serious" symptoms or "serious" impairment in social and occupational functioning. A rating of 51 to 60 indicates "moderate" symptoms or "moderate" difficulty in social or occupational functioning. Id. Although the use of the GAF scale is not endorsed by the Social Security Administration because its scores do not have any direct correlation to the disability requirements and standards of the Act, See 65 Fed.Reg. 50746, 50764-65 (2000), as with any other clinical findings contained in narrative reports of medical sources, the ALJ nevertheless is to consider and weigh those findings under the standards set forth in the regulations for evaluating medical opinion evidence. 20 C.F.R. §§404.1527(d) and 416.927(d).

...

Francis, who opined that plaintiff has no more than moderate restrictions in her ability to carry out detailed instructions, respond appropriately to work pressures and changes in a usual work setting, and that her restrictions in all other functional areas are no more than slight. (R. 407-409).[6]

To the extent plaintiff alleges that Dr. Brinkley's opinion is supported by a psychological evaluation and medical source statement from Dr. Fernan, who opined that plaintiff has marked restrictions in her ability to carry out detailed instructions and to interact appropriately with supervisors and co-workers, and extreme restrictions in her ability to interact appropriately with the public, respond appropriately to work pressures and work changes in a usual work setting (R. 382), the ALJ also expressly addressed this assessment and noted that it too was not consistent with the record as a whole nor with plaintiff's self-reported activities, including her statements that she can handle changes in her schedule and has no difficulty getting along with others. (R. 17).

Based upon his review of the <u>entire</u> record, the ALJ concluded that plaintiff's impairments, while severe, do not result in the debilitating limitations set forth by Dr. Brinkley or Dr. Fernan.

---

[6] Plaintiff contends that the ALJ "cherry-picked" findings from the report of Dr. Francis and failed to acknowledge his statement that plaintiff "appears qualified for Disability." However, plaintiff takes this statement out of context. Dr. Francis actually stated that <u>if</u> plaintiff has the other conditions mentioned in her history of illnesses, she <u>appears</u> qualified for disability. However, Dr Francis went on to state his opinion that "she may do things to torpedo getting better," and that she is "looking for excuses to qualify for Disability." (R. 405)

Because their opinions are not supported by the objective medical evidence and are inconsistent with other substantial evidence in the record, including their own findings, the ALJ did not err in not giving those opinions controlling, or even significant, weight. 20 C.F.R. §§404.1527(d) and 416.927(d); SSR 96-2p.

The ALJ also addressed correspondence from plaintiff's counselor, Hallie Carlton, who offered her opinion that plaintiff "not only qualifies but is well-deserving of Social Security benefits." (R.347). Although not an "acceptable medical source" within the meaning of the regulations,[7] the ALJ nevertheless considered Ms. Carlton's opinion but declined to accept it, noting that plaintiff had not been in treatment with Ms. Carlton since March of 2008, over two years before the ALJ's decision, and that her opinion on whether plaintiff is entitled to benefits is an issue reserved to the Commissioner. 20 C.F.R. §§404.1527(e) & 416.927(e); SSR 96-5p. The court finds no error in the ALJ's analysis of Ms. Carlton's correspondence.

Finally, plaintiff's argument that the ALJ improperly emphasized older evidence over more recent evidence is without merit. In this regard, plaintiff contends that the ALJ erroneously "focused" on a GAF score of 58 set forth in a psychiatric evaluation conducted by Dr. Sapra in June 28, 2007,

---

[7] Under the regulations, while evidence from "acceptable medical sources" is necessary to establish the presence of a medically determinable impairment, the ALJ is permitted to consider evidence from "other sources" regarding the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §§404.1513 and 416.913; see also SSR 06-03p.

(R. 340), instead of accepting the more recent report from Dr. Fernan, who rated plaintiff's GAF at 45 on September 9, 2009. However, contrary to plaintiff's argument, Dr. Sapra's GAF rating actually is consistent with GAF scores contained in the most recent medical reports in the record, including that from Dr. Francis, who rated plaintiff with a GAF of 55-60 on January 9, 2010, and Dr. Brinkley, who rated a GAF of 60 on November 3, 2009.

In sum, the ALJ did a thorough job in his decision in setting forth the relevant medical evidence and explaining why he rejected or discounted any evidence. The court has reviewed the ALJ's decision and the record as a whole and is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Plaintiff next contends that the ALJ's credibility determination is not supported by substantial evidence. Specifically, plaintiff argues that her allegations of pain and physical limitations arising from her impairments are consistent with the medical evidence and that the ALJ misrepresented plaintiff's activities of daily living in rendering his adverse credibility finding.

The court finds no error in the ALJ's evaluation of plaintiff's subjective complaints of pain and limitations. As required, in assessing plaintiff's credibility the ALJ considered plaintiff's subjective complaints, but <u>also</u> considered those complaints in light of the medical evidence and all of the other evidence of record. 20 C.F.R. §§404.1529(c) and 416.929(c); <u>see</u>

<u>also</u> SSR 96-7p. Upon consideration of all of the evidence, the ALJ found that plaintiff's "self-reported activities of daily living are inconsistent with an individual experiencing symptoms to the degree alleged." (R. 16). The ALJ did a thorough job in his decision explaining why plaintiff's allegations of disabling subjective symptoms are not supported by the record, in particular by the objective medical findings, as well as by plaintiff's limited treatment for both her physical and mental impairments and the fact that she has not always been compliant with her treatment. (R. 15-19). Based upon that evidence, the ALJ found plaintiff to be not entirely credible as to her symptoms and limitations.

While plaintiff suggests that the ALJ misrepresented her activities of daily living by not giving credence to her testimony as to how her pain and other symptoms limit her ability to engage in those activities, the ALJ's finding that plaintiff is not entirely credible finds support in the report of Dr. Francis, who opined that plaintiff's "veracity or ability to report her situation correctly is only fair," (R. 405), and further observed that "[o]ddly, [plaintiff] agrees that she can cook, shop, clean, maintain her residence, and pay for her bills ... handle laundry and personal care, health and hygiene. But she tries to put qualifications on all of these things ... [and] is always making adjustments that would downgrade her ability to join the adult workforce." (R. 406). Even Dr. Fernan, upon whose report plaintiff heavily relies, acknowledged that there was a chance,

albeit in his view, a "very small chance," that plaintiff "could be exaggerating her symptoms." (R. 399).

It also is important to note that while the ALJ did not find plaintiff's subjective complaints <u>entirely</u> credible, his decision makes clear that, to the extent plaintiff's allegations as to the limitations arising from her impairments are supported by the medical and other evidence, the ALJ accommodated those limitations in his residual functional capacity finding. Only to the extent that plaintiff's allegations are not so supported did the ALJ find them to be not credible.

The ALJ adhered to the appropriate standards in evaluating plaintiff's credibility and it is not this court's function to re-weigh the evidence and arrive at its own credibility determination. Rather, this court must only determine whether the ALJ's credibility determination is supported by substantial evidence and the court is satisfied that it is.

Plaintiff's remaining argument is that the ALJ erred by failing to consider the impact of all of her impairments, and in particular her physical impairments, either singly or cumulatively, in assessing her ability to work. Plaintiff contends that there is a plethora of evidence that she has hepatitis C, fibromyalgia, degenerative disc disease in her neck and low back, arthritis and headaches, but that the ALJ failed to consider how those impairments impacted her ability to work. This argument is belied by the record.

Although it is true that plaintiff has been diagnosed with a number of physical ailments, it is well settled that disability is not determined merely by the presence of an impairment, but by the effect that impairment has upon the individual's ability to perform substantial gainful activity. <u>Jones v. Sullivan</u>, 954 F.2d 125, 129 (3d Cir. 1991). Here, a review of the decision establishes that the ALJ considered plaintiff's physical impairments, alone and in combination, at every step of the sequential evaluation process in determining what effect those impairments have on her ability to work.

At step 2, the ALJ found that her spinal stenosis, myositis and myalgias, carpal tunnel syndrome, herniated nucleus pulposus with radiculopathy and hepatitis C all are severe impairments. (R. 12). He also considered each of those impairments at step 3 and determined that none of her physical impairments, alone or in combination, meet or equal any of the listings. (R. 12-13). The ALJ adequately explained his findings at both step 2 and step 3 and those findings are supported by substantial evidence as set forth in his decision.

The ALJ's residual functional capacity at step 5 also addresses all of plaintiff's physical impairments and their impact on her ability to work. Specifically, the ALJ accommodated plaintiff's: carpal tunnel syndrome by including a limitation that she avoid prolonged writing, frequent keyboard work or other repetitive motions; degenerative disc disease in her neck and back and her myalgias by providing for a sit/stand option during the

work day; and hepatitis C by restricting her to occupations that do not involve the handling, sale or preparation of food and which are not in the medical field. (R. 15). All of these limitations are consistent with the medical evidence, as discussed in the ALJ's decision.[8]

The court is satisfied that the ALJ adequately considered the impact all of plaintiff's impairments, both physical and mental, alone and in combination, on her ability to work and that his residual functional capacity finding accounts for all of the limitations arising from her impairments which are supported by the medical and other evidence.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

---

[8] Plaintiff argues that in assessing plaintiff's residual functional capacity, the ALJ "emphasized" a statement from plaintiff's treating physician that he is "unaware of any physical limitations or disability in this patient" and that the ALJ based his hypothetical to the vocational expert on this statement. However, while acknowledging in his decision that Dr. States had opined that plaintiff has "no physical limitations on her ability to perform work-related activities," the ALJ expressly *rejected* that statement as not consistent with the medical evidence (R. 18) and instead incorporated into his residual functional capacity finding and his hypothetical all limitations supported by the evidence.

cc:	Querino R. Torretti, Esq.
	600 Main Street
	P.O. Box 218
	Reynoldsville, PA 15851

	Stephanie L. Haines
	Assistant U.S. Attorney
	319 Washington Street
	Room 224, Penn Traffic Building
	Johnstown, PA 15901